FIRST TRUST COMPANY OF LINCOLN, APPELLEE, v. CARL C. CARLSEN: JOHN A. REICHENBACH ET AL., APPELLANTS.

FILED JUNE 26, 1936. No. 29832.

*Perry, Van Pelt & Marti,* for appellants.

*Beghtol, Foe & Rankin, contra.*

Heard before GOSS, C. J., GOOD, DAY and CARTER, JJ., and KROGER and IRWIN, District Judges.

Goss, C. J.

This is the second appearance of this cause in this court. The first judgment for plaintiff was reversed and the cause remanded. *First Trust Co. v. Carlsen*, 129 Neb. 118, 261 N. W. 333. The decision in that case is the law of this case so far as it applies to the facts.

This is an action at law for damages brought by the First Trust Company of Lincoln as successor-trustee of Lincoln Trust Company against defendants. Plaintiff as such successor-trustee represented 38 bondholders who had purchased bonds from the Lincoln Trust Company and the Lincoln Safe Deposit Company and claims to have suffered damages by reason of the negligent and fraudulent conduct of defendants as officers and directors of those companies. It is alleged that the bondholders here involved purchased and owned $43,000 worth of bonds out of a $45,000 issue of mortgage bonds secured by a first mortgage on 480 acres of Dixon county land. The facts and issues are rather fully stated in the opinion in the former case to which reference is hereby made for the sake of brevity.

After the mandate went down in the former case, defendants Holm, Mellor and Reichenbach filed an amended and supplemental answer in which they admitted that, by reason of the rule announced in this case by the supreme court, they are liable for the damages resulting from the breach of trust by the Lincoln Trust Company, but these defendants averred that the damages consisted solely of a loss of rents from September 1, 1931, to July 9, 1932.

The trial resulted in a verdict against all four defendants for $25,000, for which judgment was entered. On hearing the motion for a new trial, the court ordered a remittitur of $7,000, which was complied with. Defendants Holm, Mellor and Reichenbach appealed. Defendant Carlsen did not appeal.

The admission of liability by defendants left the case in such a situation that it was necessary to prove only the damages that the bondholders had suffered by reason

of the negligent and fraudulent conduct of defendants. This admission of liability, first made in the answer, was made over and over on the trial when defendants were objecting to certain evidence received by the court and submitted to the jury. Some of this evidence related to facsimile signatures of interest coupons attached to bonds secured by mortgages, which the evidence tended to show were unauthorized by the makers. The tendency of this evidence was to create in the minds of the jurors an impression that defendants were parties to or responsible for forgeries in connection with mortgages entirely disassociated with the mortgage involved here.

Other evidence, likewise objected to and received in evidence, related to the practice of the Lincoln Trust Company in making what is referred to as "employee loans." These were mortgage loans in instances where the trust company would have the title to mortgaged property conveyed to an employee, who would then execute a new mortgage or new notes and coupons which would be substituted for notes and coupons held by a customer of the trust company who would be left in ignorance of this fraud upon him and would believe that the substituted security was a good live security. Then the employee would convey the title to the trust company, subject to the mortgage. The employee would be financially irresponsible. This practice was a fraud upon bondholders. Much evidence of this nature was received over the objection of defendants, notwithstanding defendants had admitted liability on account of the mortgage in this suit. It was irrelevant to the real issue on the trial which had to do only with the amount of damages the bondholders had suffered by reason of the neglect and fraud for which defendants were responsible, as shown in the former opinion, and as admitted by defendants in their new answer based on that opinion. This evidence was calculated to inflame the passions of the jury and ought not to have been admitted. The loan was made by Webb Kellogg and wife, was extended on March 1, 1925, for five years by R. H. Matthew-

son (the then owner) and wife, who signed the new coupons. The former opinion holds that, while the bond-holders did not authorize the extension, they approved and ratified the act of the then trustee in making the extension to March 1, 1930. So it was in no sense an "employee loan" but was a valid loan made by the owner of the farm and later extended by a valid agreement made with a subsequent owner of the same farm.

Defendants on this trial tendered an instruction to disregard all evidence as to "employee loans." It was refused. We think the reception of evidence as to "employee loans" and the refusal of an instruction to disregard such evidence constituted prejudicial error calling for a reversal.

Plaintiff cites general texts and some cases, where admissions were limited, to justify the rule that it was not erroneous to receive the evidence complained of. But we are of the opinion that it was prejudicially erroneous to have received this irrelevant evidence in the face of the unqualified admission of liability made by defendants in their answer.

Many other criticisms are made of instructions given and refused by the court. On another trial these will be eliminated if the trial is had upon the theory that defendants Holm, Mellor and Reichenbach admit liability for damages and that the only question to submit to the jury is the amount of damages suffered by the bondholders. So it is not necessary to discuss other errors.

"If the trustee commits a breach of trust, he is chargeable with * * * any loss or depreciation in value of the trust estate resulting from the breach of trust." Restatement, Trusts, sec. 205.

Under the rules laid down in *First Trust Co. v. Carlsen,* 129 Neb. 118, 261 N. W. 333, defendants, as officers of Lincoln Trust Company, were declared liable for the acts of that company as trustee. It was in recognition of that rule that defendants admitted liability for whatever damages resulted to the bondholders for whom the present plaintiff is trustee.

There was authority in the former opinion in this case for the instruction given by the court in the trial of the instant case for the jury to fix the damages to the bondholders by finding the difference in the value of the mortgaged land on the first day of March, 1929 (which was the date when Lincoln Trust Company should have notified the bondholders of the default to pay interest on their bonds), and November 14, 1932 (which was the date the trial court found this suit had been begun), if the jury found the value on the first date exceeded the value on the latter date.

On further consideration of the measure of damages to the bondholders, we do not find in the circumstances any particular warrant for postponing the fixing of the last named date to the time when the suit was actually begun. Rather, we think, that date should be fixed as of the time when the bondholders, represented by the trustee, could have obtained dominion over the mortgaged land. Inasmuch as these bondholders owned only $43,000 of the $45,000 bonds secured by the mortgage and $2,000 was held by the original mortgagee, plaintiff would be entitled to only 43/45 of the value of the security. So that the true measure of damages to the bondholders represented here would be 43/45 of the difference in (1) the value of the land on March 1, 1929, and (2) the value of the land when it came to the bondholders or when they could have taken dominion over it with knowledge that the original trustee had breached his trust, if the land was worth less on the latter date than on the former date. Just what that date is will be disclosed by the evidence on another trial. Unless it is fixed by the evidence beyond dispute, so that it can be stated by the court, it will be the province of the jury to fix it upon a preponderance of the evidence. There is some contention, too, that defendants are entitled to credit for some interest or some rentals, or both, collected for the benefit of the bondholders between March 1, 1929, and the date when the bondholders got dominion over the mortgaged property. If that should

appear in the evidence, defendants should receive such credit through a proper instruction to the jury on that point.

The judgment of the district court is reversed and the cause remanded for a new trial in harmony with this opinion.

REVERSED.